Fee Paid

Rymir Satterthwaite
3650 N. Marvine St.
Philadelphia, PA 19140
rymirhere@gmail.com
Plaintiff *In Pro Per*

FILED
CLERK, U.S. DISTRICT COURT

5/6/25

CENTRAL DISTRICT OF CALIFORNIA
BY: ___CS___ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

RYMIR SATTERTHWAITE

Plaintiff,

vs.

SHAWN COREY CARTER,

Defendant.

Case No.: CV25-4251-PA(PVC)

Judge: _____

COMPLAINT FOR DAMAGES

Plaintiff, RYMIR SATTERTHWAITEY ("Rymir") ("Plaintiff"), brings this action in an individual capacity and allege the following upon information and belief, and based on personal knowledge:

## I. INTRODUCTION

1. This case arises from a decades-long, deliberate, and unlawful campaign by Defendant Shawn Corey Carter, a powerful public figure, to evade legal accountability, obstruct justice, and inflict systemic harm on Plaintiff Rymir. What began in the mid-1990s as Defendant's music career soared to prominence quickly evolved into a scorched-earth effort to bury a personal truth: that he fathered a child with a 16-year-old girl who is now deceased. That child is Plaintiff Rymir Satterthwaite. For nearly twenty-five years, Rymir's Godmother, Lillie Coley, has served as his

1

caregiver, protector, and advocate, while facing unrelenting efforts by Defendant and his enablers
to suppress the truth and silence those who dared to speak it.

1. Plaintiff Rymir Satterthwaite is a natural person and citizen of the Commonwealth of
   Pennsylvania. He is the biological son of the late Wanda Satterthwaite and was under the legal
   guardianship of Coley during critical periods of his life. Although Wanda initiated proceedings in
   Pennsylvania to establish the identity of Rymir's biological father, this lawsuit is not being brought
   to relitigate any domestic relations matters. Plaintiff Rymir brings this to assert personal claims for
   injuries resulting from the unlawful conduct described herein.

2. Under the direction and encouragement of Defendant Carter, his agents, enablers, and even public
   officials acted in concert to carry out fraudulent schemes, manipulate judicial proceedings, and
   systematically deny Plaintiff Rymir his constitutional and statutory rights. Defendant's conduct
   was not merely personal misconduct, it was a coordinated scheme involving individuals acting
   under color of law to obstruct access to justice and shield a powerful celebrity from the
   consequences of his actions.

3. Plaintiff Rymir alleges that Defendant Carter and his co-conspirators committed fraud upon
   multiple courts, misrepresented facts, interfered with procedural due process, and exploited legal
   systems in multiple jurisdictions to suppress Plainitff Rymir's paternity claim and prevent legal
   accountability. These actions include, but are not limited to, concealing material facts,
   manipulating property records, orchestrating venue transfers, and obstructing child support
   enforcement efforts.

4. These actions were not isolated incidents, but they were part of an intentional, multi-jurisdictional
   effort to evade scrutiny, preserve public image, and deny Plaintiff Rymir his fundamental rights.
   Plaintiff Rymir were repeatedly denied a fair and impartial forum to seek redress, and Defendant's

manipulation of the legal process has resulted in profound and lasting harm, including emotional distress, reputational damage, financial deprivation, and the denial of equal protection under law.

5. This action is not about child support per se, but about the extensive misconduct of Defendant Carter and others committed to avoid being held accountable at all. Plaintiff Rymir brings this Complaint to hold Defendant Carter liable for his willful abuse of power and disregard for the law, and to seek redress under 42 U.S.C. § 1983 and related federal and state laws for the deprivation of their civil rights.

## II. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(1)–(4), 1346(b), 2201, and 2202, as the claims arise under the Constitution and laws of the United States and seek redress for the deprivation of civil rights and other violations of federal law.

8. The Court has personal jurisdiction over Defendant because he is a permanent resident of the State of California and maintains continuous and systematic contacts within this jurisdiction sufficient to satisfy due process.

9. Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1391(b)(2), (c)(1), (f)(1), and (f)(3), because a substantial part of the events or omissions giving rise to the claims occurred in this District and because the Defendant resides here.

## III. PARTIES

**10.** Plaintiff Rymir Satterthwaite is a natural person and citizen of the Commonwealth of

Pennsylvania. He is the biological son of the late Wanda Satterthwaite and was under the legal

guardianship of Lillie Coley during critical periods of his life. Although Wanda initiated

proceedings in Pennsylvania to establish the identity of Rymir's biological father, this lawsuit is

not being brought to relitigate any domestic relations matters. Rymir brings in his individual

capacity to assert personal claims for injuries resulting from the unlawful conduct described

herein.

**11.** Defendant Shawn Corey Carter, known professionally as "Jay-Z," is a natural person and citizen of

the State of California. He is an internationally recognized rapper, entrepreneur, and music

industry executive with significant personal and business ties to California. Defendant Carter is the

biological father of Plaintiff Rymir Satterthwaite and is being sued herein for actions taken to

evade legal accountability and suppress the truth concerning his paternity and related misconduct.

## IV. FACTUAL ALLEGATIONS
### A. Defendant's Abandonment and Assumption of Legal Custody

**12.** Plaintiff Rymir Satterthwaite is the biological son of Wanda Satterthwaite (now deceased) and

Defendant Shawn Corey Carter, professionally known as "Jay-Z," an internationally recognized

entertainer and entrepreneur. Wanda devoted nearly two decades in pursuing legal recognition of

Plaintiff Rymir's identity, a pursuit that ended in tragedy with her untimely death, exhausted and

disillusioned by years of denial and obstruction.

**13.** Following Wanda's gravely ill status in March 2011, Lillie Coley assumed the role of protector

and caregiver of Rymir. On June 14, 2011, the Family Division of the Superior Court of New

Jersey, Atlantic County awarded Coley legal custody of the minor Rymir (Docket No. FD-01-

4

001823-11). At the time, Rymir was a high school student residing in New Jersey and later pursued college studies there under Coley's guardianship.

14. Despite credible evidence construing paternity, Defendant Carter has neither affirmatively acknowledged nor legally denied his parental relationship with Rymir. Defendant has consistently refused to submit to court-ordered paternity testing, choosing instead to obstruct and manipulate the legal process through procedural maneuvers and the influence of legal counsel and surrogates.

### B. Jurisdictional Obstruction and Manipulation of Court Proceedings

15. Defendant Carter's sweeping influence over the legal system became instantly apparent, when on August 13, 2012, Court applied an unexpected perversion of state law, dismissed Coley's complaint for lack of personal and subject matter jurisdiction.

16. It is a matter of debate as to whether it is acquiescing to the inevitable seduction of Defendant carter's celebrity status, or subjugation to Defendant Carter's exploitative maneuvering of the judicial system, the unexpected dismissal of a routine paternity proceedings was not only dismissed but was closed to the public, record inexplicably sealed from the public.

17. In her earnest attempt to cure the apparent defects of her prior complaint, Coley on November 6, 2012, Coley filed a motion for Reconsideration and to reopen the case, FD-04-00287-12, this time attaching Defendant Carter's New Jersey property deeds and New Jersey tax records to establish that personal jurisdiction existed over the claims and the parties.

18. Defendant Carter's exploitation of the judicial system revealed again when on December 14, 2012, the Court abused its discretion in denying Coley's Motion on grounds that no jurisdiction over the defendant despite having in front of them the property deeds and tax records of Defendant Carter.

COMPLAINT FOR DAMAGES

19. During this court proceedings, Defendant Carter continued to disavow his sufficient contact with the State of New Jersey, repeatedly perpetrating fraud upon court in his relentless denial on record he had no properties in the state of New Jersey.

## C. Defendant's Manipulation of the System Injured Petitioner

20. Procedural saga of Defendant Carter's disavowal and denial of his paternity, his ownership of property in New Jersey coincided with Defendant's strong-arm tactics to muzzle Plaintiff Rymir and Coley from advancing their case, publicly or through the legal system.

21. Defendant Carter continued to conspire against Plaintiff by perpetuating a litany of fraudulent acts, subverting material facts, exploiting the procedural loopholes in the judicial system, while relentlessly working through his men and agents to muzzle Plaintiff's free speech rights.

22. Procedural saga of Defendant Carter's disavowal and denial of his paternity, his ownership of property in New Jersey coincided with Defendant's strong-arm tactics to muzzle Plaintiff from advancing their case, publicly or through the legal system. Defendant Carter continued to conspire against Plaintiff by perpetuating a litany of fraudulent acts, subverting material facts, exploiting procedural loopholes in the judicial system, while relentlessly working through his agents to suppress Plaintiff' free speech rights.

23. The campaign against Coley and her Godchild Plaintff Rymir transcended mere legal obstruction to include disturbing incidents of harassment and intimidation. Following Plaintiff filings documenting Defendant's alleged criminal acts, Plaintiff Rymir's vehicle was shot six times—a clear message intended to silence Plaintiff's pursuit of justice. Such acts of intimidation mirror tactics documented in *Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965), where the Court recognized that harassment and threats can constitute "a chilling effect upon the exercise of First Amendment rights."

**24.** The intimidation escalated to include nighttime visits to Coley's New Jersey residence at 4:00
AM—visits designed not for lawful service of process but to create an atmosphere of fear and
vulnerability. These acts of intimidation coincided precisely with key legal filings and escalated as
Plaintiff made progress in documenting Defendant's true property holdings and jurisdictional
connections.

**25.** On January 13, 2022, this campaign of intimidation reached its apex when Defendant secured an
extraordinary injunction barring Plaintiff from filing any complaints or applications in any court
throughout the State of New Jersey, denying them their constitutional right to due process and
access to courts. This unprecedented order was secured without proper service to Plaintiff, who
learned of it only when attempting to exercise

**26.** Defendant Carter muzzled Plaintiff's free speech rights by limiting and causing to limit public
discussion and press coverage.

**27.** However, at this time, Plaintiff is neither interested in any child support nor keen on bringing any
domestic relations matter involving Defendant Carter, instead, Plaintiff seeks to redress their
grievances that arose from the litany of malfeasance that has been associated with court
proceedings because of the influence exerted by Defendant Carter.

**D. Defendant's Unrelenting Influence Unravels the Judicial Process**

**28.** On December 12, 2012, during a court hearing, Defendant Carter and his attorney sought to
pervert the proceedings by narrating conflicting and contrasting status regarding Defendant
Carter's residential address. Despite this, the court refused to take corrective action to amend the
record.

**29.** September 2013, during proceedings on Rymir's Inheritance Rights Civil Law Complaint (Docket
No. FD-04-186-14), court in concert with Defendant's counsel, altered the designation of Rymir's

mother from defendant to plaintiff. This procedural manipulation served to obscure and disregard evidence submitted by Plaintiff, which demonstrated that Defendant Shawn Carter owned property in New Jersey, thereby establishing personal jurisdiction. Defendant nonetheless maintained on the record that he held no property within the state.

30. Plaintiff's December 2014 complaints and associated claims, despite being supported by newly discovered evidence indicating Defendant Carter's owning multiple properties in New Jersey, contradicting earlier assertions and affirming that the court possessed jurisdiction, was not given its due process.

31. On February 3, 2015, Defendant carter again perpetrated fraud upon court, in responding to the complaint in CAM-L-4749-14 by fraudulently advancing argument that the State of New Jersey lacked personal jurisdiction over him.

32. On February 19, 2015, the court issued an order in CAM-L-4749-14, directed solely to the court clerk, mandating the sealing of the entire case record and its removal from public access. Notably, no other such order was issued to the parties to the litigation, including Plaintiff Rymir.

33. On March 26, 2015, despite establishing personal, general, and specific jurisdiction through sufficient minimum contacts, Court, at the behest of Defendant Carter's counsel, denied Plaintiff.

34. On May 15, 2015, the Court, heavily influenced by Defendant Carter's celebrity status, denied the Daily News' motion to vacate the order sealing the courtroom and case record. The court further ordered that the Daily News, its agents, and all parties to the action were prohibited from disseminating any information derived from the sealed proceedings or related documents for the purpose of facilitating news reporting on the matter.

35. Various adverse orders imposed upon Plaintiff Rymir resulted directly from Defendant Carter's perpetration of fraud upon the courts.

36. Coley and Plaintiff Rymir respectfully avers that multiple judicial ruling, as evidenced by the inconsistent handling of her suits, including courts expressing constraints such as "his hands were tied," redirecting Plaintiff to alternate jurisdictions for remedy, and voiding legitimate orders, are indicative of Defendant Carter's undue influence on the judicial process.

37. As a result of Defendant Carter's exertion of influence over judicial proceedings, courts have imposed sanctions on Plaintiff, enforced non-existence gag orders, and inflicted emotional and psychological harm upon him.

38. From 2017-2022 about Rymir had limited participation with courts due to court bullying and the attempted murder on his life regarding his car being shot up. However, defendant still included his docket number in most litigation involving other parties such as Coley.

39. On January 13, 2022, the trial court issued an injunction barring Plaintiff Rymir and other parties from filing any complaints or applications in the trial court and throughout the State of New Jersey, effectively denying his constitutional right to due process.

40. Defendant Carter applied undue pressure and influence on the judiciary, culminating in the issuance of the January 2022 injunction that prohibited Plaintiff from initiating legal action in any court within New Jersey.

41. Courts have repeatedly interfered with Plaintiff's due process rights at the behest of Defendant Carter and his agents and enablers within the legal system.

42. Sanctions were imposed upon Plaintiff despite the absence of evidence, under allegations that he disseminated documents to the public in violation of non-existent gag orders and concerning incidents that never occurred.

43. Parties were persistently obstructed by the New Jersey Appellate Court, where Defendant Carter's influence remained operative. For instance, in August 2022, the Appellate Court denied Coley's

appeal and Motion to Reinstate Appeal, while retaining both her filing fee and payment for document production.

44. In December 2023, Plaintiff Rymir became aware of the illegal liens placed upon his godmom's Coley primary residence at the direction of Defendant Carter's agents, during the sale of the property. These liens were entered pursuant to court orders obtained through jurisdictional fraud.

45. On January 29, 2024, Coley lost the sale of a second home as a direct consequence of the illegal liens placed on his godmom's previous residence. Additionally, Coley's second property in New Jersey became at risk due to ongoing perverse orders entered against her.

46. The pervasive and omnipresent influence of Defendant Carter has devastated Plaintiff's emotional state.

47. Plaintiff Rymir avers that the fraudulent conduct of Defendant Carter and his agents has substantially degraded his emotional condition, as adverse judicial orders have been strategically weaponized to deny his access to the courts and obstruct his ability to pursue legitimate legal redress.

E. **Compelling Public Policy Considerations**

48. Beyond the technical jurisdictional analysis, compelling public policy considerations demand this Court's intervention. Defendant Carter has systematically manipulated jurisdictional rules across multiple states to evade accountability for his conduct with a minor, resulting in the death of a woman still fighting for justice and ongoing financial harm. As the Supreme Court emphasized in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950), due process is not intended as "a shield for the avoidance of obligations."

49. The case before this Court implicates California's substantial interest in regulating the conduct of its residents, particularly those who use their wealth and influence to systematically obstruct justice. The extraordinary measures Defendant has deployed to avoid a simple paternity test—

measures that have spanned nearly three decades and multiple jurisdictions—demand this Court's intervention not merely as a matter of jurisdiction, but as a matter of fundamental justice.

50. This Court stands as the final bulwark against Defendant's ongoing campaign to evade accountability. Having exhausted other avenues through deliberate jurisdictional manipulation, Plaintiff turn to this Court not for a domestic relations decree, but for adjudication of independent tort claims arising from a documented pattern of exploitation and obstruction. The circumstances demand this Court's exercise of its lawful jurisdiction to prevent the further perpetuation of injustice.

## F. The Extraordinary Measure to Evade a Simple Test

51. Perhaps most telling is the extraordinary disproportion between what Plaintiff seek—a simple paternity test that could be completed in days, and the decades-long, multi-jurisdictional campaign Defendant has waged to prevent it. This disproportion itself speaks volumes about Defendant's consciousness of the likely outcome of such testing.

## V. LEGAL ANALYSIS ON JURISDICTION

### A. Personal Jurisdiction Over Defendant Carter

52. While this case is primarily brought under the federal court's diversity jurisdiction, Defendant Shawn Carter is also subject to specific personal jurisdiction in California based on his forum-related conduct. Plaintiff satisfies the Supreme Court's three-part test for specific jurisdiction articulated in *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021), and *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985).

53. First, Defendant Carter's continuous commercial and personal presence in California, including maintaining permanent residence and conducting business operations, demonstrates purposeful availment. His deliberate presence and activity in the forum state clearly satisfy the first prong.

54. Second, Plaintiff's claims are closely connected to Defendant's forum-related conduct. His use of procedural manipulation and abuse of court systems across jurisdictions to avoid accountability directly relates to his base of operations and legal team in California. Thus, prong two is also satisfied.

55. Third, the exercise of jurisdiction over Defendant Carter in California comports with traditional notions of fair play and substantial justice. Plaintiff alleges sustained injury due to Carter's misuse of power, wealth, and influence. Given Carter's substantial resources and extensive contacts with California, it is reasonable to subject him to litigation in this forum.

56. This Court has personal jurisdiction over Defendant Carter under both general and specific jurisdiction principles. As established in Daimler *AG v. Bauman*, 571 U.S. 117 (2014), general jurisdiction exists where a defendant is "essentially at home" in the forum state. Defendant Carter is domiciled in California, maintaining his principal residence in Malibu. Domicile alone is sufficient to establish general jurisdiction. *Milliken v. Meyer*, 311 U.S. 457, 463 (1940).

57. Defendant Carter's connections with California are substantial and definitive:

a. **Real Estate Holdings:** In 2023, Defendant purchased a 40,000-square-foot mansion in Malibu's exclusive Paradise Cove neighborhood for approximately $190-200 million. The most expensive residential real estate transactions in California history. This Tadao Ando-designed property at 27712 Pacific Coast Highway represents Defendant's deliberate choice to establish his premier family residence in California.

b. **History of California Residency:** Defendant has maintained continuous physical presence in California for years. In 2017, Defendant resided in a $400,000/month Malibu mansion known as "La Villa Contenta." From 2014 to 2015, Defendant rented a Holmby Hills estate for $150,000 monthly—evidence of his long-term commitment to California residency.

c. **Family Integration:** In 2016, Defendant relocated his family to Los Angeles specifically so that his daughter could attend an exclusive California private school. Sources confirm that Defendant is "very involved" at the school and Carter even goes to PTA meetings—a level of community integration that establishes California as his chosen domicile.

d. **California Business Operations:** Defendant maintains extensive business operations in California, including his entertainment company Roc Nation, which represents numerous California-based artists. These are active business operations that Defendant oversees from California, generating substantial revenue within this forum.

e. **California Tax Obligations:** Defendant has filed California tax returns and paid California state taxes, as evidenced by California tax lien filings in Sacramento County Court. Specifically, records show a State Tax Lien filed on April 25, 2022, in Sacramento County Court for $191,871, which was later released on October 26, 2022. Another State Tax Lien was filed on September 2, 2015, in Sacramento County Court for $176,672.

f. **California Property Address:** Defendant maintains a California address at 2220 Colorado Ave, Santa Monica, CA 90404-3506, as documented in official records.

g. **Current Legal Matters in California:** According to published reports, Defendant is currently involved in legal proceedings in California, further demonstrating his substantial presence in this forum.

58. These connections to California are not merely "random, fortuitous, or attenuated," but demonstrate Defendant Carter's purposeful availment of the privilege of conducting activities within California, thereby invoking the benefits and protections of its laws. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). The Supreme Court in *Burnham v. Superior Court of California*, 495 U.S. 604 (1990), affirmed that physical presence in a state remains sufficient for

the exercise of personal jurisdiction, and Defendant Carter's continuous physical presence in California through his permanent residence substantially exceeds this threshold.

59. Even if general jurisdiction were not established, this Court unquestionably possesses specific jurisdiction over Defendant Carter. Under the three-prong test articulated in *Ford Motor Co. v. Montana*, the Eighth Judicial District Court, 592 U.S. 351 (2021), specific jurisdiction exists when (1) the defendant purposefully avails himself of the forum; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable

**B. General Jurisdiction and Forum Nexus**

60. Under *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011), general jurisdiction exists where a defendant is "essentially at home." While Plaintiff do not rely on general jurisdiction, it is notable that Defendant Carter maintains permanent residency in California and conducts substantial and habitual business activities within the state, further justifying forum selection.

61. Additionally, under *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), personal jurisdiction exists when a defendant has sufficient "minimum contacts" with the forum state. Here, Defendant Carter's California residency and business operations create continuous and systematic ties. His misconduct, concealment, fraud, and obstruction—had effects reaching into California and caused direct harm to Plaintiff.

62. Applying the "effects test" from *Calder v. Jones*, 465 U.S. 783 (1984), Defendant's acts were expressly aimed at Plaintiff with knowledge they would suffer foreseeable harm. Defendant Carter's nationwide platform, celebrity status, and personal presence in California justify the conclusion that he could reasonably foresee being liable for harm caused to Plaintiff.

63. Even if the challenged actions did not physically occur in California, the nexus between Defendant's conduct, his base of operations, and the harm caused satisfies the constitutional threshold for personal jurisdiction.

## VI. FEDERAL DIVERSITY JURISDICTION

### A. Statutory and Constitutional Basis

64. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), as the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff Rymir is a citizen of Pennsylvania, while Defendant Carter is a permanent resident of California. Complete diversity is therefore satisfied.

65. Plaintiff seeks monetary damages arising from tortious acts, including fraud, abuse of process, civil conspiracy, and constitutional violations. These claims are wholly independent of any domestic relations decree, and Plaintiff explicitly do not seek custody, support modification, or equitable family-law-based relief.

66. Even if this Court denies Plaintiff's specific and personal jurisdiction, it is the bounden duty of this Court to enable Plaintiff to get his day in court based on the following discussion. Plaintiff brought the suit on behalf of himself in the district court on the basis of federal jurisdiction under the diversity of citizenship provision, 28 U.S.C. § 1332.

### B. Plaintiff Satisfies Diversity Jurisdiction Conditions

67. The courts in New Jersey, California, and Pennsylvania have dismissed Plaintiff's pleadings without prejudice, ruling alternatively on jurisdictional grounds—some citing lack of jurisdiction,

others referencing lack of subject matter jurisdiction. However, these courts have left open the

issue of diversity jurisdiction and have not addressed the abstention principle established in

*Younger v. Harris*, 401 U.S. 37 (1971).

68. As articulated in *Ankenbrandt v. Richards*, 504 U.S. 689 (1992), the U.S. Supreme Court advanced

the domestic relations exception, which prohibits district courts from exercising diversity

jurisdiction over certain tort actions for damages when the core issue belongs within domestic

relations. However, Plaintiff argues that this lawsuit is not confined to the province of domestic

relations, and therefore diversity jurisdiction under § 1332 is properly invoked in this case.

69. In this context, it is important to reproduce the relevant portion of Article III, Section 2 of the U.S.

Constitution in the below paragraph.

70. "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution,

the Laws of the United States, and Treaties made, or which shall be made, under their Authority; to

all Cases affecting Ambassadors, other public Ministers and Consuls;to all Cases of admiralty and

maritime Jurisdiction; to Controversies to which the United States shall be a Party; to

Controversies between two or more States;—between a State and Citizens of another State,

between Citizens of different States, between Citizens of the same State claiming Lands under

Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens

or Subjects."

71. Constitution clearly delineates the absolute limits of federal court jurisdiction when the

constitution articulates with "Cases" and "Controversies." Therefore, there is no explicit limitation

in the Constitution that excludes cases of a domestic relations nature from federal judicial purview.

Yet, it is well-established that federal courts traditionally lack jurisdiction over certain domestic

issues.

72. Plaintiff explicitly seeks to avoid the invocation of domestic relations exception. While the controversy involving Defendant Carter may have originated in a domestic relations matter, the criminal antecedents of Defendant Carter span multiple decades. Plaintiff is neither inclined nor interested in anchoring her case on the foundation of domestic relations. Rather, Plaintiff's tort claim is based on actual, proximate, and real injury suffered due to the actions and inactions of Defendant Carter, who has pursued a scorched-earth campaign while evading justice through collusion and coordination with state functionaries in both New Jersey and Pennsylvania.

73. It is precisely due to such biases, interference, and undue influence, often embedded within state actors and systems, that the Constitution provides for diversity jurisdiction. Accordingly, Plaintiff's invocation of federal jurisdiction is proper and warranted.

## C. Domestic Relations Exception Does Not Apply

74. Plaintiff acknowledge the limited domestic relations exception to federal jurisdiction, articulated in *Ankenbrandt v. Richards*, 504 U.S. 689 (1992). However, this exception applies only to cases seeking the issuance or modification of a divorce, alimony, or custody decree, not to tort-based claims for damages.

75. Plaintiff's claims involve discrete civil wrongs, such as misuse of judicial mechanisms, unlawful and systemic denial of due process. These actions constitute justiciable tort claims, not disguised attempts to reopen family law judgments.

76. As *Ankenbrandt* affirmed, federal courts retain jurisdiction over torts arising in family contexts when they do not seek domestic relief. Plaintiff's claims fall squarely within this allowance.

## D. Abstention Doctrines Are Inapplicable

77. Plaintiff further rebuts any invocation of *Younger* abstention (*Younger v. Harris*, 401 U.S. 37 (1971)) or Burford abstention (*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)). There are no ongoing

state proceedings, no complex state regulatory scheme implicated, and no active enforcement
actions being adjudicated elsewhere.

78. All relevant state proceedings have concluded, been dismissed, or remain sealed without final
resolution. Plaintiff asserts that their rights to fair adjudication in state court were irreparably
compromised through judicial bias, sealed records, and unconstitutional filing restrictions.
Abstention is inappropriate where no parallel proceedings exist and where state remedies have
failed.

## E. Jurisdiction is Necessary to Prevent Injustice

79. As Article III, Section 2 of the Constitution provides, federal courts may hear cases "between
citizens of different states." There is no constitutional limitation barring federal jurisdiction over
claims arising in a family law context if they assert torts or civil rights violations.

80. Plaintiff affirms that he is not seeking a custody decree or child support judgment. Instead, he
seeks damages and constitutional relief for decades of obstruction, manipulation, and unlawful
conduct, including, emotional distress, and loss of access to courts.

81. To the extent the Court wishes to analyze whether these claims "arise out of" or are inextricably
intertwined" with family law proceedings, Plaintiff submits that any such relationship is incidental,
not central. The claims presented do not ask the Court to review or reverse any state family court
ruling.

82. Given the allegations of bias, forum manipulation, and judicial irregularities, federal jurisdiction is
not only proper, but also necessary. Diversity jurisdiction serves precisely this purpose: to afford
out-of-state litigants an impartial and neutral forum when state systems have failed.

83. Accordingly, the domestic relations exception does not bar jurisdiction, and abstention doctrines do not apply. The claims arise from intentional torts and constitutional violations, not domestic law, and this Court may and should assert jurisdiction.

## VII. CAUSES OF ACTIONS

### FIRST CAUSE OF ACTION
### Deceit by Concealment
### (California Civil Code § 1710(3))
### (Against Defendant Shawn Carter)

84. Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

85. Under California Civil Code § 1710(3), deceit includes the suppression of a material fact by one who is bound to disclose it, or who provides other information likely to mislead in the absence of full disclosure.

86. Defendant Shawn Carter, through his own conduct and that of his attorneys and agents, intentionally and knowingly concealed material facts regarding his contacts with the State of New Jersey, including but not limited to:

    a.   Ownership of real property within the state;

    b.   Filing of New Jersey tax records;

    c.   Other financial and legal connections directly relevant to establishing personal jurisdiction in related court proceedings.

87. Defendant had a duty to disclose these facts during judicial proceedings where personal jurisdiction was challenged, and where such information was essential to fair adjudication. Instead, Defendant:

    a.   Repeatedly and falsely denied any property ownership or ties to New Jersey under oath;

    b.   Permitted his legal counsel to make misstatements on the record without correction, including a later-admitted false statement about his residential address;

c. Submitted misleading legal arguments aimed at depriving the court of jurisdictional facts.

88. Defendant's concealment was not merely passive. It constituted an affirmative and calculated effort to mislead courts, obstruct justice, and prevent Plaintiff from asserting his legal rights. These acts were part of a broader pattern of obstruction and were executed with the aid and complicity of legal counsel.

89. As a direct and proximate result of Defendant Carter's deceitful concealment, Plaintiff suffered substantial harm, including but not limited to:

a. The wrongful dismissal of petitions for paternity and child/college support due to the court's purported lack of jurisdiction;

b. Diversion of funds to provide for Plaintiff Rymir, the biological son of Defendant Carter, in the absence of Defendant abandoning his duty towards providing maintenance to Rymir;

c. The incurrence of significant legal expenses, litigation costs, and filing expenses in efforts to reopen or reassert jurisdiction;

d. Emotional distress and reputational injury caused by protracted, unjust litigation;

e. Financial losses resulting from obstruction and denial of lawful claims.

90. Defendant Carter's conduct was outrageous, willful, malicious, and done with conscious disregard for Plaintiff's legal rights. He intended to and did cause injury by misleading courts and suppressing material facts. Plaintiff therefore seek punitive damages pursuant to California Civil Code § 3294.

91. Plaintiff respectfully requests:

a. Compensatory damages in an amount to be proven at trial;

b. Exemplary and punitive damages;

c. Reasonable legal expenses;

d. Costs of suit;

e. And such other and further relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION
### Abuse of Process
### (Against Defendant Shawn Carter)

**92.** Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

**93.** Defendant Shawn Carter, acting individually and through his legal representatives and agents, willfully misused the judicial process in multiple state court proceedings with improper purposes and objectives unrelated to the legitimate ends of those proceedings.

**94.** Rather than utilizing the courts to resolve genuine legal disputes in good faith, Defendant Carter invoked jurisdictional defenses and filed responsive pleadings with the ulterior motive of obstructing and delaying efforts to pursue paternity-related claims..

**95.** Defendant Carter repeatedly denied owning property in New Jersey, even after Plaintiff presented verified documentation including property deeds and state tax records that contradicted these claims. These misrepresentations were not only false but were knowingly and strategically advanced to deprive the courts of jurisdiction and prevent a ruling on the merits.

**96.** Defendant further leveraged sealed court orders, false filings, and procedural technicalities to exhaust Plaintiff's resources, suppress evidence, and avoid judicial accountability. His actions constituted a deliberate and calculated abuse of judicial machinery.

**97.** Defendant's intent was not to vindicate a lawful right but to:

    a. Delay proceedings indefinitely;
    b. Obstruct the truth regarding paternity and financial responsibility;
    c. Financially and emotionally wear down Plaintiff;
    d. Conceal misconduct through manipulation of the legal system.

98. As a direct and proximate result of Defendant's abuse of process, Plaintiff suffered significant damages, including:

   a. Denial of access to a fair and impartial judicial forum;
   b. Financial loss from repeated filings, motions, and litigation fees;
   c. Emotional distress, reputational harm, and psychological burden;
   d. Deprivation of the opportunity to pursue lawful claims in a timely and effective manner.

99. Defendant's conduct was outrageous, intentional, malicious, and executed with reckless and willful disregard for Plaintiff's constitutional and legal rights. His misuse of the process was egregious and offensive to the integrity of the judicial system.

100. Plaintiff therefore seeks:

   a. Compensatory damages in an amount to be determined at trial;
   b. Exemplary and punitive damages under applicable law;
   c. Reasonable legal expenses fees and costs of suit;
   d. And such other and further relief as the Court may deem just and proper.

### THIRD CAUSE OF ACTION

#### Intentional Infliction of Emotional Distress
#### (Against Defendant Shawn Carter)

101. Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

102. Defendant Shawn Carter, acting individually and through his attorneys and agents, engaged in an ongoing pattern of deliberate, calculated, and outrageous misconduct, designed to mislead courts, evade accountability, and obstruct Plaintiff's pursuit of legal recognition of paternity and access to justice.

103. This misconduct included, but was not limited to:

a. Repeated concealment and misrepresentation of material facts, including Defendant's ownership of property and legal presence in multiple states;

b. Denials under oath despite the existence of contrary evidence in the form of tax records and property deeds;

c. Procedural manipulation of court systems to seal records, suppress evidence, and bar Plaintiff from presenting their claims;

d. Participation in or tacit approval of court orders that gagged Plaintiff and punished him with sanctions and injunctions, all while shielding Defendant from scrutiny.

104. Defendant knew or should have known that his conduct would cause Plaintiff to experience severe emotional distress, especially given the power imbalance between a high-profile public figure and ordinary individuals lacking comparable legal or financial resources.

105. The conduct at issue was extreme, outrageous, and beyond all the bounds of human decency in a civilized society. Plaintiff is not a public figure. He did not consent to be targets of prolonged litigation obstruction, reputational suppression, and procedural abuse—acts carried out knowingly, willfully, and without justification.

106. Plaintiff has endured severe and ongoing emotional suffering, including but not limited to:

a. Anxiety, humiliation, and public shame;

b. Psychological trauma;

c. Loss of sleep and physical manifestations of stress;

d. A persistent sense of powerlessness and injustice arising from the court's inability to adjudicate their claims on the merits due to Defendant's interference.

107. Defendant's conduct was committed with malice, oppression, and conscious disregard for Plaintiff's emotional and legal wellbeing. The emotional injuries were not incidental, but the foreseeable and intended result of Defendant's ongoing campaign to silence Plaintiff and evade accountability.

108. As a direct and proximate result of Defendant's conduct, Plaintiff suffered, and continues to suffer, substantial emotional distress. Plaintiff is entitled to compensatory damages for the

psychological harm inflicted, as well as exemplary and punitive damages pursuant to California Civil Code § 3294.

**109.** Plaintiff respectfully requests:

    a.   General and special damages for emotional distress;

    b.   Punitive and exemplary damages;

    c.   Costs of suit;

    d.   And such other relief as the Court may deem just and proper.

### FOURTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress
### (Against Defendant Shawn Carter)

**110.** Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

**111.** Defendant Shawn Carter, acting individually and through the conduct of his attorneys and agents, negligently concealed and misrepresented material facts concerning his minimum contacts with the State of New Jersey, including but not limited to his ownership of real property within that jurisdiction.

**112.** These acts of concealment and misrepresentation directly obstructed Plaintiff's ability to pursue paternity and support actions on behalf of Rymir Satterthwaite, causing extended litigation, reputational damage, and emotional strain.

**113.** As the biological father of Rymir, Defendant Carter owed him a duty of care, including:

    a.   A duty not to affirmatively mislead courts regarding facts material to a child's legal identity and support;

   b. A duty to refrain from conduct that would foreseeably inflict emotional harm on a minor and his legal guardian during litigation involving matters of family identity and legitimacy.

114. Defendant knew or should have known that his actions, designed to obstruct judicial processes and suppress the truth and would cause severe emotional distress to Plaintiff as the Godmother of Rymir, particularly in light of the sensitive and consequential nature of the litigation.

115. Defendant's conduct, including the intentional misuse of legal process, repeated false statements to the court, and manipulation of judicial records and proceedings, was unreasonable under the circumstances and amounted to a breach of his duty of care.

116. As a direct and foreseeable result of Defendant's negligence, Plaintiff suffered:

   a. Emotional and psychological distress;
   b. Anxiety, humiliation, and public embarrassment;
   c. Stress-induced health and mental health complications;
   d. Harm to their sense of legal security and personal dignity.

117. Defendant's conduct was egregious, harmful, and executed with disregard for the emotional consequences, particularly as it concerned a dedicated Godmother and her relentless pursuit of providing parental identity to her Godson.

118. Plaintiff respectfully requests:

   a. Compensatory damages for emotional distress and related harm in an amount to be determined at trial;
   b. Costs of suit;
   c. And such other and further relief as the Court deems just and proper.

**FIFTH CAUSE OF ACTION**
**Unjust Enrichment**
**(Against Defendant Shawn Carter)**

119. Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

120. Defendant Shawn Carter, acting individually and through his attorneys and agents, knowingly and deliberately concealed material facts regarding his ties to the State of New Jersey—including ownership of real property and other jurisdictionally relevant contacts—to evade court-ordered responsibilities and legal obligations.

121. This pattern of concealment and misrepresentation directly led to the dismissal of Plaintiff's child and college support proceedings in New Jersey courts. As a result, Defendant avoided any judicial determination of paternity and escaped potential financial obligations that would have been owed to Plaintiff Rymir.

122. Defendant Carter thus received an unjust economic benefit by retaining funds he would likely have been obligated to pay in child and educational support. His continued refusal to acknowledge paternity—while suppressing court jurisdiction and avoiding adjudication prevented him to evade lawful responsibilities and preserve financial resources at Plaintiff's expense.

123. Meanwhile, Plaintiff:

     a. Incurred substantial legal fees, filing expenses, and litigation costs;

     b. Lost the opportunity to obtain needed financial support;

     c. Suffered prolonged economic hardship as a direct result of Defendant's concealment;

     d. Were deprived of a fair and impartial forum to assert their claims.

124. Under California law, unjust enrichment arises where one party has been conferred a benefit unjustly and it would be inequitable to allow that party to retain the benefit without compensating the harmed party. That principle squarely applies here.

**125.** Defendant's enrichment was unlawfully secured through deception and obstruction, and Plaintiff suffered clear economic and emotional detriment as a result. Equity and good conscience demand restitution.

**126.** Plaintiff therefore respectfully request:

    a.  Restitution of the value of the support unjustly withheld;

    b.  Recovery of litigation-related expenses incurred in pursuit of relief;

    c.  Costs of suit;

    d.  And such other and further equitable relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff RYMIR SATTERTHWAITE respectfully requests that this Court enter judgment in his favor and against Defendant SHAWN CARTER, and award the following relief:

1. General and compensatory damages in an amount to be proven at trial, including but not limited to: Emotional distress; Reputational harm, Loss of financial support, Out-of-pocket legal and litigation expenses.

2. Restitution and disgorgement of all unjust gains retained by Defendant as a result of the wrongful conduct alleged herein, including the value of support wrongfully withheld and financial advantages secured through obstruction and concealment.

3. Punitive and exemplary damages pursuant to California Civil Code § 3294 and any other applicable law, based on Defendant's willful, malicious, fraudulent, and oppressive misconduct.

4. Declaratory relief under 28 U.S.C. §§ 2201–2202, declaring that all judgments, liens, sealing orders, and other court actions obtained through fraud upon the court are null, void, unenforceable, and constitutionally invalid.

5. Injunctive relief enjoining Defendant from: Further interference with property rights, Enforcement of fraudulent liens, Use of judicial process to retaliate against or silence Plaintiff.

6. Equitable relief is necessary to restore Plaintiff to the position he would have occupied but for Defendant's unlawful conduct, including remedies that address the financial, reputational, and procedural harms suffered.

7. Reasonable legal expenses and costs of suit pursuant to applicable federal and state law, including but not limited to 42 U.S.C. § 1988, where applicable.

COMPLAINT FOR DAMAGES

8. Pre-judgment and post-judgment interest as permitted by law.

9. Such other and further relief as the Court may deem just, proper, and equitable under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Rymir Satterthwaite
3650 N. Marvine St.
Philadelphia, PA 19140
rymirhere@gmail.com
Plaintiff *In Pro Per*